Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| AUTOPISTAS METROPOLITANAS DE PUERTO RICO, LLC<br>Apelado<br><br>v.<br><br>BAYAMÓN MILITARY ACADEMY, INC.; BMA INVESTMENT GROUP, CORP.; TRINITY MEDIA GROUP, LLC; GREEN STEEL, LLC; VELÁZQUEZ HYDRAULIC SERVICE, INC.; MULTINATIONAL INSURANCE COMPANY; UNIVERSAL GROUP, INC.; COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO, INC.; FULANO y SUTANO DE TAL; COMPAÑÍAS A, B, y C; ASEGURADORAS X, Y, y Z<br>Demandados<br><br><br>VELÁZQUEZ HYDRAULIC SERVICES, INC.<br>Apelante | TA2025AP00228 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2022CV00804<br><br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Juez Ponente, Adames Soto

## **SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2025.

Comparece Velázquez Hydraulic Service, Inc. (VHS o parte peticionaria), a través de un recurso que denominó de *apelación*, pero que acogemos como *certiorari*. Nos solicita que revoquemos una *Sentencia Parcial*[1] dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 1 de julio de 2025. Mediante esta, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por Autopistas Metropolitanas de Puerto Rico,

---

[1] A pesar de que el TPI identificó su dictamen como una *Sentencia Parcial*, realmente nos encontramos ante una resolución interlocutoria. Esto, por cuanto, según se explicó en *Díaz v. Navieras de P.R,* 118 DPR 297 (1987), una *sentencia parcial final* dictada en el contexto de una causa de acción donde se requiere determinar daños, no resuelve finalmente la cuestión litigiosa de la cual pueda apelarse, por lo que se reputa de carácter interlocutorio. Por ello, mientras no se resuelva el último aspecto de la sentencia, la cuantía de los daños, (como es el caso ante nuestra consideración), no puede ser final el dictamen, por no ser ejecutable. Sin embargo, para evitar confusión clerical, mantendremos la numeración alfanumérica original.

Inc. (Metropistas o parte recurrida), disponiendo que las codemandadas Green Steel LLC., (Green Steel), y VHS son responsables de los daños causados a la recurrida, pero disponiendo que la valoración de tales daños se hará en un momento procesal posterior. Junto a ello, el mismo foro primario declaró *No Ha Lugar* la moción de sentencia sumaria instada por VHS.

Insatisfecho, VHS acude ante nosotros planteando que no cabía atribuirle responsabilidad por los daños que Metropistas alegó haber sufrido, por cuanto la responsabilidad legal de obtener el permiso para perforar el lugar donde acontecieron los hechos recaía en el codemandado Green Steel.

Evaluadas las respectivas mociones dispositivas, junto a los escritos en oposición a sentencia sumaria y el dictamen recurrido, determinamos *confirmar*.

## I. Resumen del tracto procesal

El 25 de febrero de 2022 Metropistas presentó una *Demanda* en daños y perjuicios contra Bayamón Military Academy, Inc.,[2] BMA Investment Group, Corp., Trinity Media Group, LLC (Trinity); Green Steel, LLC (Green Steel), Velázquez Hydraulic Service, Inc. (VHS), Multinational Insurance Company (Multinational), Universal Group, Inc. (Universal) y la Cooperativa de Seguros Múltiples de Puerto Rico, Inc. (Cooperativa). Metropistas alegó que, en o alrededor del 2 de junio de 2020, mientras se llevaban a cabo tareas de construcción relacionadas al proyecto *Valla Publicitaria Digital con Tecnología LED Bayamón Military Academy*, se impactó y rompió parte de un tubo de agua del Superacueducto, propiedad de la Autoridad de Acueductos y Alcantarillados (AAA).

En específico, se alegó que mediante el proyecto aludido se propuso una **excavación** para colocar un *billboard* en un predio de terreno localizado en la carretera 871, esquina expreso José de Diego, sector Volcán Arenas del barrio Hato Tejas en Bayamón, Puerto Rico. Metropistas resaltó, además, que

---

[2] La parte recurrida desistió de su reclamación contra Bayamón Military Academy, Inc. el 2 de junio de 2023, pero continuó contra las demás partes mencionadas, incluyendo a BMA Investment Group, Corp. El 5 de junio de 2023 el foro primario declaró *Ha Lugar* la solicitud de desistimiento y decretó el archivo sin perjuicio de la reclamación correspondiente.

Trinity Media requirió y contrató los servicios de Green Steel para realizar tales trabajos y que esta última, a su vez, subcontrató los servicios de Velázquez Hydraulic para los servicios de excavación. Añadió que, como consecuencia de dicha ruptura del tubo descrita, hubo daños severos al puente núm. 1576 ubicado a la altura del kilómetro 15.1, y a la autopista PR-22, resultando en el cierre de varios carriles. En concreto, adujo que el agua que brotó del tubo afectó la integridad física de la estructura del puente y su cimiento. Por tal razón, Metropistas, entidad encargada del cuido y mantenimiento del puente por virtud de un contrato de concesión suscrito con la Autoridad de Carreteras y Transporte, (AC) se vio forzada a actuar de manera inmediata para evitar un accidente fatal, asumiendo los costos relacionados.

En lo referente al derecho a ser aplicado, Metropistas citó el Art. 1802 del Código Civil[3], imputándole responsabilidad extracontractual a cada uno de los demandados, al causar daño por culpa o negligencia, y requirió ser indemnizado para cubrir los gastos incurridos por razón de construcción, reparación, limpieza y personal, ascendientes a una suma no menor de $600,000.00.

Por motivo de ello, VHS presentó contestación a la *Demanda*, admitiendo y negando alegaciones, además de levantando defensas afirmativas. Entre tales defensas esgrimió: no haber incurrido en conducta culposa o negligente; que no tenía a su cargo la obtención de los permisos para la excavación, sino que el codemandado Green Steel, o un tercero, eran los responsables de identificar donde se debía barrenar y cerciorarse que no se causaran daños; su participación se limitó a realizar la labor que se le encomendó, confiando que el lugar donde se barrenaría no presentaba riesgos o peligro alguno.

---

[3] Para la fecha en que Metropistas alegó que ocurrieron los hechos, el Código Civil de 2020 no había entrado en vigor, por lo que resultaban de aplicación las disposiciones del Código Civil de 1930, según fue correctamente reconocido en la *Demanda.*

Entonces, habiendo finalizado el descubrimiento de prueba, VHS presentó una *Moción de Sentencia Sumaria.* A tales efectos, enumeró veintidós hechos que identificó como incontrovertidos, aludiendo a la prueba documental que los sustentaban, para entonces argumentar en derecho por qué no se le podía imputar responsabilidad por los daños alegados. En general, adujo que no había base legal para imputarle culpa o negligencia, pues no era el responsable de escoger el lugar del barreno, ni de procesar los permisos y notificaciones con el Centro de Excavaciones y Demoliciones, como tampoco de reportar el daño causado. En lo particular, aseveró que hizo el barreno en el lugar que le fuera instruido por representantes de Green Steel. Añadió que los hechos alegados en la *Demanda* fueron investigados por el Centro de Excavaciones y Demoliciones de Puerto Rico, (el Centro), lo que tuvo como resultado que Green Steel fuera multado.

En respuesta, Metropistas presentó *Oposición a Moción de Sentencia Sumaria de VHS y Moción Solicitando Sentencia Sumaria contra VHS, Green Steel y Universal.* En su escrito, luego de iniciar exponiendo su teoría legal, Metropistas atendió cada uno de los hechos que propuso VHS en su moción de sentencia sumaria como incontrovertidos, admitiendo algunos e impugnando otros, con alusión a la prueba documental pertinente. Entonces, en lo relativo a su petición de sentencia sumaria, enumeró noventa y cinco hechos que identificó como *relevantes sobre los que no existe controversia*, para lo cual incluyó amplia prueba documental con que sostenerlos.

A través de las distintas secciones contenidas en el escrito en oposición a sentencia sumaria y petición de sentencia sumaria de Metropistas, este aseveró que el Artículo 6 de la Ley Núm. 267 de 11 de septiembre de 1998, según enmendada, Ley del Centro de Coordinación de Excavaciones y Demoliciones de Puerto Rico, (Ley de Excavación), 21 LPRA sec. 4631e, requiere que todo excavador solicite un permiso de excavación al Centro previo al comienzo de una excavación. Precisó, a su vez, que el propósito de la obtención del permiso era que el Centro divulgara a las entidades que

pudiesen tener facilidades soterradas en el predio para que estas las identificaran y así evitar que se afectaran. Acentuó, que la obligación de obtener el permiso era indelegable, y que la ausencia de este fue lo que provocó que las codemandadas excavaran en un área incorrecta, provocando los daños que reclama. En lo particular, advirtió que, **aunque VHS hubiese contratado con Green Steel para que este obtuviera el permiso requerido para excavar, fue el peticionario quien ejecutó la excavación, y tenía la obligación de velar que sus actos no causaran daños a terceros, pero no lo hizo, sino que no solicitó se le proveyera copia del permiso, o tan siquiera lo miró**. (Énfasis provisto). Llamó la atención al hecho de que la relación contractual entre Green Steel y VHS lo que daría lugar sería a una acción de nivelación entre estos, pero, en cualquier caso, ambos responderían por los daños causados ante Metropistas. Abundó sobre las obligaciones que la Ley de excavación le impone al excavador, identificando al recurrido como tal.

A raíz de ello, VHS instó moción en oposición a la petición de sentencia sumaria presentada por Metropistas. Es de notar que, aunque en su escrito VHS inició afirmando que *existen controversias de hechos esenciales que impiden se dicte sentencia sumaria en este caso*[4], **no proveyó la lista de hechos que Metropistas enumeró como incontrovertidos para impugnarlos**, **menos aún incluyó evidencia documental para ese propósito**. Más bien, mediante esta moción, VHS reiteró la teoría legal que promovía, en el sentido de que la responsabilidad legal de obtener el permiso para excavar, y escoger dónde se barrenaría, recaía en Green Steel, según así lo determinó el Centro, siendo dicha parte el *excavador* para propósitos de la legislación que gobierna tal actividad.

Por otra parte, Green Steel, junto a su asegurador, Universal, presentaron *Oposición a solicitud de sentencia sumaria presentada por demandante*. A distinción del escrito descrito en el párrafo que precede, en

---

[4] Apéndice del recurso de *certiorari*, entrada núm. 271 de SUMAC.

este escrito en oposición sí se incluyó la lista de cada uno de los hechos que Metropistas propuso como incontrovertidos, admitiendo algunos e impugnando otros, con la inclusión de la prueba documental para ese propósito. Entonces, luego de citar el derecho que juzgó aplicable, concluyó que existían hechos materiales en controversia que imposibilitaban acceder a la solicitud de sentencia sumaria.

Examinadas las referidas mociones y escritos en oposición, el TPI emitió la determinación que denominó *Sentencia Parcial,* por la cual declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por Metropistas, concluyendo haber quedado demostrada la negligencia de VHS, Green Steel y su aseguradora, Universal, que dio lugar a los daños alegados. Al así disponer, enumeró diecisiete hechos como *probados*, identificó dos hechos que permanecían en controversia (atinentes a cuánto ascienden los daños y si fueron producto del incidente), para concluir con la aplicación del derecho a tales hechos.

Al aplicar el derecho, el TPI inició estableciendo que, de los hechos encontrados como probados, **quedaba claro que VHS no preguntó a Green Steel si había conseguido los permisos, ni hizo esfuerzos para conseguirlos. Además, durante la excavación que VHS realizó, perforó un tubo del Superacueducto, causando daños**. Luego de concluir lo anterior también determinó que, aunque Green Steel se había obligado a conseguir los permisos para la perforación, ello era responsabilidad de VHS como excavador. Añadió que los hechos estaban claros respecto a que dichos codemandados carecían de los permisos adecuados para perforar.

Inconforme, VHS presentó ante el foro primario una *Moción de Determinaciones de Hechos Adicionales y Reconsideración.* Sin embargo, el TPI la declaró *No Ha Lugar*.

Es así como VHS acude ante nosotros, solicitando la revocación de la resolución dictada en su contra, señalando los siguientes errores:

1. Erró el TPI al concluir que VHS era responsable legalmente por no haber obtenido el permiso requerido por la Ley Núm. 267-1998, cuando del récord surge incontrovertiblemente que VHS fue un subcontratista cuyo alcance contractual no incluía gestionar permisos, ni podía legalmente hacerlo.

2. Erró el TPI al adjudicar responsabilidad civil a VHS sin identificar una conducta culposa u omisiva imputable a VHS que cumpliera con los elementos de responsabilidad extracontractual bajo el Artículo 1802 del Código Civil.

3. Erró el TPI al adjudicar responsabilidad a VHS por la selección del punto de excavación, cuando del expediente surge de forma inequívoca que dicha selección fue realizada por Green Steel y Trinity, y que VHS se limitó a ejecutar instrucciones del contratista general.

4. Erró el TPI al acoger la moción de sentencia sumaria de Metropistas contra VHS, pese a la existencia de hechos materiales en controversia sobre el alcance contractual de VHS, la obligación de obtener permisos, y la relación causal entre la conducta de VHS y los daños alegados.

5. Erró el TPI al ignorar las determinaciones administrativas del Centro de Coordinación de Excavaciones y Demoliciones, que impusieron las multas exclusivamente a Green Steel como "excavador" responsable bajo la Ley Núm. 267-1998, y no a VHS.

6. Erró el TPI al adjudicar responsabilidad solidaria a VHS por las acciones u omisiones de su contratante Green Steel.

Por su parte, Metropistas presentó *Memorando en Oposición a Expedición del Recurso de Certiorari*.

Estamos en posición de resolver.

## II. Exposición de derecho

a.

La sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". *Ramos Pérez v. Univisión*, 178 DPR 200, 220 (2010). Por lo tanto, el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013).

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que deniega su aplicación, este foro intermedio se encuentra en la misma posición que el foro primario para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 115 (2015). Los criterios que debemos seguir al atender la revisión de una sentencia sumaria dictada por el foro de instancia han sido enumerados con exactitud por nuestro Tribunal Supremo. *Id.*, págs. 118-119; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018). A tenor, el Tribunal de Apelaciones debe:

> 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, y la jurisprudencia le exigen al foro primario;
> 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;
> 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;
> 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Id.,* pág. 679.

Sin embargo, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 118. El primer punto se enfoca en el principio de que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. *Id.,* pág. 115. Por su parte, el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlas. *Id.*

A tenor, la Regla 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, especifica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En suma, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. *Id.* Ahora bien, "es esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993 (2024); *Zambrana García v. ELA*, 204 DPR 328, 341-342 (2020); *Jusino et al. v. Walgreens*, 155 DPR 560, 577 (2001).

En contraste, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3 (b) de las de Procedimiento Civil, *supra*. De aquí que la parte que se opone a que se dicte sentencia sumaria no puede descansar exclusivamente en sus alegaciones, ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.,* 177 DPR 369, 383 (2009). Por el contrario, debe controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía,* 168 DPR 127, 138 (2006). Ello se puede lograr a través de contradeclaraciones juradas y contradocumentos que pongan en entredicho los hechos presentados por el promovente. *Ramos Pérez v. Univisión P.R., Inc.,* supra, pág. 215, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

b.

El Artículo 1802 del Código Civil[5], 31 LPRA sec. 5141, dispone que, el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Por ello, para imponer responsabilidad civil al amparo del mencionado artículo, es necesaria la concurrencia de los siguientes requisitos: (1) realidad del daño sufrido; (2) un acto u omisión culposo o negligente; y, (3) nexo causal entre el daño y la referida acción culposa o negligente. *López v. Porrata Doria*, 169 DPR 135, 161 (2006).

Se ha enfatizado que, en aquellos casos en que se alega que el daño se debe a una omisión, se configura la causa de acción cuando exista un deber de actuar y se quebrante esa obligación; y cuando de haberse realizado el acto omitido se hubiese evitado el daño. *Santiago Colón v. Supermercados Grande*, 166 DPR 796, 807 (2006); *Administrador v. ANR*, 163 DPR 48 (2004); *Elba ABM v. UPR*, 125 DPR 294 (1990).

Nuestro Tribunal Supremo ha explicitado que la culpa o **negligencia** es **la falta del debido cuidado que, a la vez, consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente y razonable habría de prever en las mismas circunstancias**. (Énfasis provisto). *Valle v. E.L.A.*, 157 DPR 1 (2002). En lo pertinente, el **acto negligente** se ha definido como:

> [...] el quebrantamiento **del deber impuesto o reconocido por ley de ejercer, como lo haría una persona prudente y razonable, aquel cuidado, cautela, circunspección, diligencia, vigilancia y precaución que las circunstancias del caso exijan, para no exponer a riesgos previsibles e irrazonables de daños como consecuencia de la conducta del actor**, a aquellas personas que, por no estar ubicadas muy remotas de éste, **un hombre prudente y razonable hubiese previsto, dentro de las circunstancias del caso, que quedaban expuestas al riesgo irrazonable creado por el actor**. (Énfasis provisto). *Pons v. Engebretson*, 160 DPR 347 (2003); *Pacheco Pietri y otros v. ELA y otros*, 133 DPR 907 (1993); H.M. Brau Del Toro, *Los daños y*

---

[5] A pesar de que, como advertimos, hacemos alusión al derogado Código Civil y su jurisprudencia interpretativa por causa de la fecha en que ocurrieron los hechos, valga señalar que el artículo del vigente Código Civil 2020, Art. 1536, 31 LPRA sec. 5141, no procura variar los principios básicos del superado Art. 1802. Ver, M.R. Garay Aubán, *Código Civil 2020 y su Historial Legislativo*, 2da. Ed., S.J., Ediciones SITUM, 2021, Tomo 4, pág. 544.

*perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 183.

Otro elemento imprescindible para que proceda una acción en daños, es que debe existir una relación causal suficiente, en Derecho, entre el acto negligente y los daños producidos. El deber de indemnizar presupone un nexo causal entre el daño y el hecho que lo origina, pues solo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización. *López v. Porrata Doria, supra,* pág. 151*.* Es decir, al *elemento de la negligencia lo acompaña* **la relación causal exigida entre el daño presuntamente causado y la acción u omisión que pudo ser prevista y pudo haber evitado el daño.** (Énfasis provisto). Id.

**III. Aplicación del derecho a los hechos**

a.

Nuestra labor revisora al sopesar las mociones dispositivas instadas al amparo de la Regla 36 de Procedimiento Civil, *supra,* y sus escritos en oposición, acontece *de novo.* Por esto, primero observamos si tales mociones cumplieron con las formalidades dimanantes de la Regla 36.3(a) y (b) de Procedimiento Civil, *supra,* para entonces considerar si existen hechos en controversia pues, de no ser así, solo correspondería aplicar el derecho pertinente.

Al examinar la moción de sentencia sumaria instada inicialmente por VHS, juzgamos que cumplió sustancialmente con los requisitos formales aludidos. A igual conclusión llegamos con relación a la petición de sentencia sumaria presentada por Metropistas.

De manera similar, al verificar el escrito en oposición a sentencia sumaria presentado por Metropistas, resulta evidente que fue incluida una lista con cada uno de los hechos propuestos por VHS como incontrovertidos, admitiendo algunos e impugnando otros, con alusión a la prueba documental pertinente. Es decir, Metropistas cumplió de manera cabal con la exigencia reglamentaria sobre oposición a escrito de sentencia sumaria.

A *contrario sensu,* la moción en oposición de sentencia sumaria que presentó VHS no cumplió con el esencial requisito establecido en la Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRA Ap. V, de proveer una relación concisa y organizada con referencia a los párrafos enumerados por Metropistas de los hechos esenciales incontrovertidos, y menos aún proveyó prueba documental para tratar de controvertirlos. En palabras sencillas, para VHS oponerse adecuadamente a los hechos propuestos como incontrovertidos por Metropistas, necesariamente debía enumerarlos, para entonces presentar argumentos impugnatorios, acompañados con prueba documental que sirviera a tal propósito, pero no lo hizo.

A lo anterior se añade que, en el recurso de *certiorari* que VHS presentó ante nosotros, este afirmó que existían hechos esenciales en controversia que hacían improcedente conceder el remedio sumario solicitado. Sin embargo, tampoco se atuvo al rigor de especificar cuáles de los hechos medulares propuestos por Metropistas en su petición de sentencia sumaria continuaban en controversia, menos aún señalarnos la prueba documental que sirviera para impugnarlos. De los noventa y seis hechos propuestos por Metropistas como incontrovertidos, VHS se limitó a mencionar que permanecían en controversia: el verdadero alcance contractual del encargo a VHS; la identificación de quien ostentaba la condición de excavador bajo la Ley 267 (Ley de Excavación); la capacidad de VHS para obtener los permisos sin obtener los permisos base del proyecto.[6] Estos, los juzgamos más bien como controversias de derecho, y, aunque se encontraran en la frontera de lo que es una controversia de hecho o de derecho, **en modo alguno cuestionan adecuadamente los hechos esenciales que dieron lugar a la adjudicación de la responsabilidad a VHS por el foro recurrido**.

En definitiva, examinadas las respectivas mociones dispositivas y sus escritos en oposición, coincidimos con la apreciación del TPI en su enumeración de los hechos materiales que no están en controversia, por lo

---

[6] Recurso de *certiorari,* pág. 23.

que los incorporamos a nuestro dictamen de manera íntegra. Al así afirmar no eludimos nuestra labor de examinar si la documentación presentada por Metropistas sostenía los hechos que promovió como incontrovertidos, pero aun hecho tal ejercicio, coincidimos con las determinaciones de hechos del foro primario. No existiendo controversias de hechos esenciales, solo nos resta aplicar el derecho correspondiente.

b.

La teoría legal de VHS descansa en la afirmación de que no cabe atribuirle responsabilidad por los daños alegados por Metropistas, pues la obligación legal y contractual de obtener los permisos para excavar y elegir el punto donde se excavaría correspondía por entero a Green Steel. Es decir, VHS nos propone que no tenía obligación alguna sobre dónde excavar, pues solo le correspondía seguir la instrucción de Green Steel al respecto. Esta propuesta no es sostenible.

En primer término, VHS no ha logrado rebatir, en modo alguno, la determinación de hechos sobre: la inexistencia de permisos para excavar donde se hizo; que ni siquiera preguntara a Green Steel si había obtenido el permiso para excavar antes de llevar a cabo tal trabajo, menos aún solicitar que se le mostrara el permiso requerido. En este sentido, VHS no llevó a cabo gestión alguna para cerciorarse de que la excavación que haría correspondía a un lugar autorizado para ello. Según indicamos en la exposición de derecho, la culpa o negligencia es la **falta del debido cuidado** que, a la vez, consiste esencialmente en **no anticipar y prever las consecuencias racionales de un acto**, **o de la omisión de un acto**, **que una persona prudente y razonable habría de prever en las mismas circunstancias**. (Énfasis provisto). *Valle v. E.L.A.*, supra. Tal como el foro recurrido, apreciamos negligencia en la omisión de VHS al no preguntar sobre los permisos que había acordado con Green Steel que este último obtendría para excavar. Es decir, el que VHS excavara en un lugar donde desconocía que contara con el debido permiso fue claramente imprudente e irrazonable.

En este sentido, y aun partiendo del entendido de que recayera en Green Steel la sola obligación de obtener el permiso para excavar, y precisar dónde se excavaría, la responsabilidad mínima esperable de una persona prudente y razonable que llevara a cabo la excavación era la de verificar que se contara con el permiso correspondiente adecuado para realizar la perforación en el lugar preciso autorizado, antes de realizarla. VHS no es un mero autómata que, sin reflexión alguna o verificación de permiso, pueda cavar las vías públicas.

Sobre la oración que precede, sépase que, desde la misma *Exposición de Motivos* de la Ley Núm. 267 de 11 de septiembre de 1998, Ley del Centro de Coordinación de Excavaciones y Demoliciones de Puerto Rico, *supra*, (Ley de Excavación), 21 LPRA sec. 4631, se enfatiza que ***los daños por excavación son la causa principal de accidentes en tuberías soterradas***, y para prevenir que ello ocurra es que el Centro de Excavación expide los permisos correspondientes antes de que se realicen tales obras, y de esto VHS tenía que estar prevenido. Por tanto, era previsible que, en ausencia de los permisos correspondientes, aconteciera el daño ocurrido. En *Rivera Pérez v. Cruz Corchado*, 119 DPR 1, 18 (1987), se matizó que el referido Art. 1802 del Código Civil, supra, *gira inevitablemente en torno a la función de previsión del individuo, como factor determinante de su responsabilidad.*

Aunque con lo hasta aquí elaborado es suficiente para entenderse como cumplidos los elementos que requiere una causa de acción por responsabilidad extracontractual bajo el Art. 1802 del Código Civil, *supra*, lo cierto es que la limitada acepción de *excavador* que nos propone VHS del Art. 2, secciones (i) y (j), de la Ley de Excavación para escapar de su responsabilidad ante un tercero tampoco nos resulta satisfactoria, por su estrechez. Ateniéndonos a la letra de la ley para su interpretación, como nos corresponde, en efecto; VHS *realizó una excavación*, para lo que *utilizó una excavadora* con el propósito de lograr tal fin, de modo que puede identificársele como el excavador.

Por último, y sin vernos precisados a elaborar, el trámite administrativo seguido por los hechos aquí narrados, que tuvo como consecuencia la imposición de una multa a Green Steel, en modo alguno impide o incide en la causa de acción por daños y perjuicios instada por un tercero, Metropistas, contra las partes que entendió están llamadas a indemnizarle. Son dos procesos independientes, que responden a normativa distinta, el Art. 1802 del Código Civil citado, y la Ley de Excavaciones. De hecho, el Artículo 13 de la Ley de Excavaciones dispone en lo pertinente que; "**lo dispuesto en este artículo no se entenderá de forma que menoscabe la responsabilidad civil**, administrativa y penal del excavador conforme a las leyes vigentes". (Énfasis provisto). 21 LPRA sec. 46311.

En definitiva, los señalamientos de error no fueron cometidos, procede expedir y confirmar.

**IV. Parte dispositiva**

Por lo explicado, expedimos el auto de *certiorari* solicitado y *confirmamos* la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones